ELWOOD HOLLINGSEAD AND WILLIAM DUNN ROGERS, PARTNERS, &c., v. CAMDEN AND SUBURBAN RAILWAY COMPANY, PROSECUTOR.

Submitted January 6, 1905—Decided February 27, 1905.

Upon the trial of an action against a traction company to recover damages for the partial destruction of a wagon with which an electric car collided, the trial judge (without objection) instructed the jury as to the duty of the motorman in terms that made the traction company an insurer against collisions under particular circumstances specified. He then refused a request for instructions to the effect that the motorman was not obliged to foresee that the driver of the wagon would leave his place of safety beside the track, and turn across the track, until he did so turn. *Held*, under the evidence in the case, and in view of the instructions actually given, that the refusal of this request was erroneous.

On *certiorari* to the Burlington Common Pleas.

Before Justices FORT and PITNEY.

For the plaintiffs, *Franklin M. Levis*.

For the defendant, *Nelson Burr Gaskill*.

The opinion of the court was delivered by

PITNEY, J. This *certiorari* is brought to review a judgment of the Common Pleas in favor of the plaintiffs, entered

upon the verdict of a jury, upon trial of an appeal from the small cause court. The action was brought to recover damages for the partial destruction of an ice wagon owned by the plaintiffs, with which a trolley car collided. The collision took place on Main street, in Moorestown, while the wagon was in charge of two employes of the plaintiffs, who were delivering ice to residents along the street. Immediately before the collision they were driving easterly along the southerly side of the street, quite clear of the trolley tracks, and then, having occasion to cross the street, they turned to the left, nearly at right angles, and drove across the tracks. Defendant's electric car was coming from the westward and struck the wagon while it was upon the tracks in crossing.

There was a motion to nonsuit, based solely on the ground of contributory negligence in the agents of the plaintiffs. A motion was also made to direct a verdict for the defendant, but without specifying any grounds for the motion, and so, at most, it raised no question beyond that raised by the motion to nonsuit. An examination of the evidence convinces us that both motions were properly denied, there being plainly disputable questions for the jury's consideration, both with respect to the negligence of defendant's motorman and with respect to the conduct of the occupants of the wagon.

The remaining reasons assigned for reversal relate to the charge of the trial judge to the jury. No objection was made below to the instructions as given, the sole criticism there suggested being to the refusal of the judge to accede to the defendant's requests to charge. All the requested instructions were given, with a single exception. In the refusal of this one we find substantial error. For an understanding of the point, it should be premised that testimony was introduced by the defendant (the witnesses being the motorman and a passenger who was in the car at the time) tending to show that as the car approached the wagon it was running at very moderate speed, and that the motorman gave signal of his approach by ringing the gong; that the wagon, which up to this point had been proceeding close to the rail of the trolley track, was thereupon driven from the rail towards the

curb at the side of the street, and that as the motorman undertook to pass the wagon the driver turned suddenly across in front of the car; that when this turn was made the wagon was only twenty feet from the front of the car, and that with the best efforts of the motorman it was impossible to stop the car in time to avoid a collision. This evidence was strongly contradicted by the testimony on the part of the plaintiffs, but, of course, the defendant had the right to ask the jury to believe it, and to give proper effect to it, if believed. On the motorman's statement, there was nothing to charge him with notice of an attempt by the driver of the wagon to cross the tracks until a point of time so late as to render it impossible to stop the car with the use of the ordinary appliances. In this juncture the trial judge instructed the jury as follows: "It is the duty of the defendant to have appliances, and a motorman who can use those appliances, *and who does use them in such a way as to prevent an accident.* If you believe, under these circumstances, that this car had these appliances and that they had a motorman who did use these appliances, and that he attempted to stop, but could not stop his car by reason of the wagon turning immediately in front of him, then it is your duty to find a verdict for the defendant. But when the wagon did turn upon the track to cross it, if the car was far enough away for the motorman to stop it before it struck the plaintiffs' wagon, *and the motorman did not use these appliances, and did not stop his car, then the defendant is liable in damages."* This language is open to the criticism that it seems to make the traction company an insurer against collisions under the particular circumstances specified. But as no objection was made below, this criticism is not here important, except as the clauses quoted have a bearing upon the action of the trial judge in refusing defendant's request for the following instruction, viz.: "A motorman is obliged to have his car under control as he approaches a wagon beside the track, but he is not obliged to infer that the driver will leave his place of safety and turn in upon the track." To this the court's response was: "I charge you that a motorman is obliged to have his

car under control as he approaches a wagon beside a track. I will not charge the latter part, but I will say that it is his duty, if the driver does leave his place of safety and turn in upon the track, to have his car under such control that he can stop his car, if it is possible to stop it, before reaching the wagon which crosses the track."

The effect of this refusal was to place upon defendant's motorman the burden of foreseeing that the driver was about to turn across the track, when there was nothing to give the motorman notice of the driver's intention. If it were admissible to construe the request as negativing the proposition that the driver ought to foresee the *probability* that a wagon proceeding along the side of the street may turn in order to cross the tracks, the refusal might be sustained. But the request conceded the motorman's duty to foresee a reasonable *probability* of the wagon being turned, for it admitted that the motorman must have his car under control. The defendant, at the same time, prayed that the jury should be instructed, in effect, that the motorman is not obliged to provide against an *actual* turning of the wagon until it does turn. This, we think, was a proper instruction, reasonably requested by the defendant under the circumstances, and in view of the evidence presented by the defendant and the other instructions given to the jury, the denial of this request was, we think, erroneous. This denial accentuated the effect of the rest of the charge in rendering the defendant company an insurer against collisions, whereas its duty is limited to the exercise of reasonable care to avoid them. *Solatinow* v. *Jersey City, &c., Railway Co.,* 41 *Vroom* 154.

Let the judgment be reversed and a *venire de novo* awarded.